UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL WYNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 16-10190-RGS |
| HARRISON SCHMIDT, and | ) | |
| GREGORY LENNON, in their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

September 5, 2017

DEIN, U.S.M.J.

## I. INTRODUCTION

This is an action for malicious prosecution and intentional infliction of emotional distress brought against two Cohasset police officers in their individual capacities. On March 26, 2015, the plaintiff, Michael Wynn, a registered sex offender, was arrested by the defendants, Harrison Schmidt and Gregory Lennon, following a report that a man in Cohasset had attempted to entice a 10 year old girl into his car by offering her a ride. Wynn remained in custody for 21 days until the Commonwealth filed a *nolle prosequi* and the charges against him were dismissed. Wynn concedes that the police had probable cause for his arrest, and that the arrest warrant was properly issued. Nevertheless, Wynn claims that his constitutional and state law rights were violated because the police allowed the investigation and case to continue after

obtaining GPS data from a court-ordered electronic monitor that established that Wynn was elsewhere at the relevant time.

In his Complaint ("Compl."), Wynn has alleged a claim under 42 U.S.C. § 1983 based on malicious prosecution (Count I) and state law claims of malicious prosecution and intentional infliction of emotional distress (Counts II and III, respectively). This matter is presently before the court on Defendants' Motion for Summary Judgment (Docket No. 33), pursuant to which the defendants are seeking the dismissal of all the claims brought against them. The defendants contend that these claims fail both on the merits, and because the defendants are entitled to qualified immunity.

After consideration of the record and the oral argument of counsel, this court recommends to the District Judge to whom this case is assigned that the motion for summary judgment be ALLOWED. Even accepting Wynn's version of events as true, he has failed to establish a violation of his constitutional rights. Moreover, the defendants are entitled to qualified immunity since there is no evidence that the police officers should have known that they were precluded from questioning the veracity of GPS data (assuming that they were not, in fact, entitled to do so). Finally, the undisputed facts establish that Wynn's state law claims of malicious prosecution and intentional infliction of emotional distress fail on the merits.

## II. <u>STATEMENT OF FACTS</u>[1]

The plaintiff, Michael Wynn, is a resident of North Attleboro, Massachusetts.  DF ¶ 1.  At all relevant times, defendant Harrison Schmidt was a Detective for the Cohasset Police Department, and defendant Gregory Lennon was a Detective Lieutenant for the Cohasset Police Department.  DF ¶¶ 2-3.

### <u>The Incident</u>

On Thursday, March 26, 2015, Officer James McLean of the Cohasset Police Department took a walk-in report of suspicious activity from a 10 year old girl and her mother.  <u>See</u> DF ¶¶ 10-11; Defs. Ex. 10 at 9/59.  As Officer McLean wrote in his report, the girl stated that she was walking home from the school bus stop, and that when she was in front of her residence on Hill Street, "a salmon colored BMW pulled up next to her.  The driver opened up the passenger's door and stated, 'You need a ride sweetheart'?"  Defs. Ex. 10 at 9/59.  The girl shut the car door, ran home and called her mother, who was on her way home from work.  <u>Id.</u>  As Officer McLean reported further:

> [The girl] described the BMW as an older model with round headlights. The passenger's side headlight lens was broken and there was a scratch on the passenger's door under the door handle.  She noticed that the vehicle had Massachusetts license plates, however she was unable to read the registration.  She said the interior of the vehicle was clean and that there was a gold iPhone 6 on the passenger's seat.  [The girl] described the driver as a white male, middle aged with brown hair and unshaven.  He had a slim build and she believed he was tall because his head was almost touching the roof of the vehicle.  His voice was normal pitched and he spoke with no accent.  He was wearing black clothing and a black watch cap.

---

[1]  Unless otherwise indicated, the facts are derived from the Defendants' Statement of Undisputed Material Facts ("DF") and exhibits thereto ("Defs. Ex.") (Docket No. 34); Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("PR") (Docket No. 41); Plaintiff's Statement of Facts ("PF") (Docket No. 40); and Plaintiff's Exhibits ("Pl. Ex.") attached to the Declaration of Drew Glassroth (Docket No. 42).  The defendants did not file a response to the plaintiff's statement of facts.

Id.  Officer McLean suggested that the girl look on-line when she got home to see if she could further identify the vehicle.  Id.  The girl's mother called back later and said that the girl was sure that the car had a Honda emblem, and that the color of the vehicle was Island Coral.  Id.; DF ¶ 19; PR ¶ 19.

The Superintendent of Schools sent an email message to parents regarding the description of the man who had approached the girl.  DF ¶ 26.  A resident of a nearby street called the police and said that the description of the man and the vehicle was consistent with the man who delivered the Patriot Ledger newspapers in the neighborhood, usually between 2 and 3 p.m. every day.  PR ¶ 26; Pl. Ex. 12.  The resident also reported that she had spoken to the deliveryman in the past, and that he was "socially off."  Pl. Ex. 12.  This information was conveyed to Det. Lt. Lennon.  Id.

## The Identification of Wynn

Det. Schmidt coordinated with the Patriot Ledger staff in order to identify the driver.  DF ¶ 29.  Det. Schmidt learned from the plaintiff's supervisor that Wynn was the only delivery driver for Cohasset at the time, Wynn drove a red Chevrolet compact, possibly an Aveo, Wynn had been working the Cohasset route for six months to one year, and his daily routine began at 11:00 a.m.  DF ¶ 30.  Det. Schmidt then checked the Massachusetts Sex Offender Registry, which appeared to disclose that Wynn was a registered sex offender with convictions for possession of child pornography in Massachusetts, and rape of a child and enticement of a child in Connecticut.  DF ¶ 31; PR ¶ 31.[2]

_____

[2]  The defendant officers subsequently learned that Wynn had not been charged with or convicted of rape, rather there was a transcription error in the Massachusetts translation of the relevant Connecticut

The police investigation continued.  It appeared that Wynn had not registered his place of work, the Town of Cohasset, with the North Attleboro Police Department and Sex Offender Registry Board, as required by law.  DF ¶ 33.[3]  A check of the Massachusetts Registry of Motor Vehicles records disclosed that Wynn lived in North Attleboro, and that he owned a red 2012 Chevrolet Sonic.  DF ¶ 34.

Det. Schmidt then applied to a clerk-magistrate, and obtained a temporary arrest warrant for Wynn.  DF ¶¶ 35, 38.  The alleged crimes were failure to register as a sex offender and enticing a child under the age of 16.  Defs. Ex. 10 at 5/59.  Officer McLean's report regarding his conversations with the girl and her mother (described above) was attached as an exhibit to Det. Schmidt's arrest warrant affidavit.  Id. at 9/59.  However, in his affidavit, Det. Schmidt stated that the man who spoke with the girl had been in a "red car."  Id. at 6/59, ¶ 7. There is no reference in the affidavit to the fact that the girl had identified the car as a Honda (or BMW), or that she had identified the color as Island Coral, not red.  Id. at 5-7/59. Nevertheless, Wynn concedes that there was probable cause for the arrest warrant to issue. See Pl. Mem. (Docket No. 39) at 1 ("Mr. Wynn does not challenge his arrest[.]").

The warrant was executed on Friday March 27, 2015, and Wynn was arrested at approximately 9:40 p.m. that evening.  PF ¶ 11.  After being advised of his legal rights, Wynn elected to make a statement.  DF ¶¶ 40-41.  Wynn admitted to Det. Lt. Lennon and Det.

---

records.  PR ¶ 32.  It appears, however, that they did not learn this until after Wynn's arraignment.  See Def. Ex. 13 at Bates No. 000075 (text exchange between police awaiting the arraignment reflects that the "ADA asked if we could try to get reports from the child porn and rape incidents on his III…").

[3]  As detailed below, this, too, was subsequently found to be false as Wynn had, in fact, properly registered.

Schmidt that he was sexually attracted to post-pubescent children, but denied that he stopped near or approached a female child in the vicinity of Hill Street on March 26, 2015. DF ¶ 42. He admitted to working for the Patriot Ledger and to delivering newspapers to customers on Hill Street and in the surrounding areas. DF ¶ 43. At the time the arrest warrant was sought and obtained, the officers were not aware that Wynn was wearing a GPS bracelet as a condition of his probation. DF ¶ 44. However, they learned this fact during the course of Wynn's booking and arrest. PF ¶ 12.

On Saturday morning, Det. Lt. Lennon was notified by the North Attleboro Police Department that Wynn had, in fact, properly registered his place of employment in Cohasset, but that the North Attleboro Police Department had mistakenly failed to report this information. DF ¶ 48; PF ¶ 18. As a result, Det. Lt. Lennon understood that there was no longer probable cause to hold Wynn for a charge of failing to register as a sex offender. PF ¶ 19. The only basis to hold him was the charge of enticement of a minor. Id.

Later in the evening of Saturday, March 28, 2015, Det. Harrison and Det. Lt. Lennon met the girl and her father in North Attleboro for the stated purpose of looking at a parked vehicle to see if she could identify it. PF ¶ 20; DF ¶ 49; Defs. Ex. 10 at 22/59. The girl was shown Wynn's red car, which she identified as being the car involved in the incident. Defs. Ex. 10 at 22/59. The girl noted a scratch on the car and a broken portion of the bottom part of the vehicle's grill, which she stated she had observed when the vehicle had approached her. Id. The girl was questioned about the fact that she had reported that a headlight was broken, yet none of the headlights on Wynn's car were, in fact, broken. Id. The girl said that from the angle at which she had observed the car, the round headlight had appeared cracked to her. Id. The

girl also had reported that the car was clean, while Wynn's car was messy and had a number of items related to delivering newspapers strewn about the car, including a postal bin in the footwell of the front passenger seat. PF ¶ 22. However, the victim was not asked about this discrepancy. Id. She was, however, asked how sure she was about the identification, to which she responded, "I'm sure" that it was the vehicle. Defs. Ex. 10 at 22/59.

Later that evening, the girl was shown a photo array by a Hingham Police Officer. DF ¶ 53. The girl did not identify Wynn. Id.; PR ¶ 53.

At some point thereafter, either on either Saturday, March 28, or Sunday, March 29, 2015, the officers obtained phone records from the girl's parents. DF ¶ 54; PR ¶ 54. These records limited the relevant time period to between 3:00 and 3:10 p.m. on Thursday, March 26th. PR ¶ 54.

On Sunday, March 29, 2015, Det. Schmidt obtained the GPS information for Wynn's whereabouts for the period March 26-28, 2015 from the Massachusetts Probation Department Electronic Monitoring Office ("ELMO"). DF ¶ 46; Defs. Ex. 10 at 37/59; PF ¶ 26. This information consisted of screen shots identifying Wynn's whereabouts. Pl. Ex. 25. The screen shots did not place Wynn on Hill Street at the relevant time. Id.

### The Arraignment

Wynn was brought to court to be arraigned on March 30, 2015. PF ¶ 42. The Cohasset police prosecutor, Officer Daniel Williams was there, as was Assistant District Attorney Sarah Lelle. Id.; PF ¶¶ 46, 48. Wynn was represented by an attorney. PF ¶ 55. Neither of the defendants were present, although Det. Lt. Lennon was in communication with Officer Williams by text. PF ¶¶ 49, 50. Officer Williams filled out an application for a criminal complaint, and a

complaint was issued charging Wynn with enticing a child under 16 and accosting/annoying a person of the opposite sex.  See Pl. Exs. 37, 33.[4]

It is undisputed that the defendants had seen the GPS results prior to the arraignment, and knew that the GPS did not put Wynn in front of 27 Hill Street in Cohasset at the relevant time.  See DF ¶ 60. It is also undisputed that the police had discussed this finding with the District Attorney's Office prior to the arraignment, but had also expressed the opinion that the prosecution should continue because they had some questions about the accuracy of the GPS data.  See PF ¶¶ 48-49, 55; PR ¶¶ 60-61, 64-68; see also Pl. Mem. (Docket No. 39) at 6 ("Officer Williams met with someone in the District Attorney's office before Mr. Wynn's arraignment to discuss the case.")  The parties disagree as to whether ADA Lelle in particular knew about the GPS data prior to the arraignment, although it is clear that she knew about it shortly thereafter.  See DF ¶¶ 61, 63-65; PR ¶¶ 61, 63-64.  Similarly, while defense counsel did not have the actual screen shots prior to the arraignment, she also had the data by the next day at the latest. DF ¶ 69.  The record is also unclear as to whether the GPS data was present in the courtroom.  In particular, Det. Schmidt had written a report which purported to attach the GPS data.  Pl. Ex. 23.  The report contained no description of the data, it merely stated that the data was attached. Id.  The plaintiff contends that the data was not, in fact, attached to the report that was brought to court, and was not provided to ADA Lelle, the court or defense counsel prior to the arraignment.  See PF ¶¶ 37-39.  It is Wynn's contention that the police should not have

---

[4] There is no evidence in the record that indicates that the facts underlying the complaint application were reviewed by any judicial officer before the complaint issued.

continued to prosecute Wynn once they had the GPS data, and that any concerns about the accuracy of the data were unfounded and unsupportable.

The parties rely on a text message exchange that occurred just prior to Wynn's arraignment between Det. Lt. Lennon (who was not in court), and the Cohasset police prosecutor, Officer Dan Williams (who was in court).  See DF ¶¶ 59-60.  As they wrote:

[time stamp Mon. Mar 30, 11:19 AM]

| | |
|---|---|
| Lennon: | Dan, [Cohasset Officer Michael Lopes] is calling me about GPS data. Do you know why DA is calling him? |
| Williams: | They were having trouble viewing the GPS logs I couldn't really answer their questions so I asked Harrison to give them a call. |
| Lennon: | Ok, they're calling Lopes now and he's calling me.  I was curious how he got involved.  According to the GPS data, Wynn was in Cohasset but was not in front of 27 Hill St. Cohasset, at the time alleged – 3:00 – 3:10 P.M. |
| Williams: | Yeah that's what I told them |
| Williams: | Not sure what their issue is |
| Lennon: | Ok.  With regard to the accuracy of the GPS, the State of California found reported locations were off by as much as three miles with 3M's devices and declared 3M's devices so faulty that the state rejected the company's bid (http://articles.latimes.com/2013/mar/30/local/la-me-ff-gps-monitors-20130331) so I wouldn't automatically assume that this product is 100% accurate because it has been proven not to be.  Pls pass that along. |
| Lennon: | Are you still at court? |
| Williams: | Yes |
| Williams: | I passed that info along to the ADA |
| Lennon: | Ok thx.  As I mentioned, I'd prefer they not dismiss it outright today |
| Williams: | ADA is telling me Patriot ledger is reporting he wasn't wearing his GPS bracelet when arrested is that true? |

|  |  |
|---|---|
| Lennon: | That's not true |
| Williams: | Okay |
| Williams: | ADA asked if we could try to get reports from the child porn and rape incidents on his III… Do you want me to handle that? |
| Lennon: | I have them.  I'll email to you in a minute. |
| Williams: | Ok great thanks |
| Lennon: | Sent |
| Williams: | Got it thanks |
| Lennon: | Any decisions made yet on him? |
| Williams: | Note (sic) they were waiting for defense attorney to arrive |
| Lennon: | Ok.  Let me know.  Thx |

Defs. Ex. 13 at Bates Nos. 000073-76; see also DF ¶¶ 59-60.  When counsel arrived, Williams was arraigned and a Dangerousness Hearing was scheduled for later that week, on April 2, 2015.  DF ¶ 62.

Det. Lt. Lennon had spoken to Wynn's probation officer, Virginia Allen, on Sunday, before the arraignment, and they continued their conversation by email the day of the arraignment and thereafter.  PR ¶ 71.  In those communications, the probation officer confirmed that Wynn had not been convicted of rape in Connecticut, see note 2, supra, and that Wynn had, in fact, properly registered as a sex offender.  Pl. Ex. 26 at 2/12.  In their (at times testy) communications, Det. Lt. Lennon repeatedly expressed his concern about the accuracy of the GPS monitoring report, and the probation officer repeatedly took the position that the GPS information was accurate, and used in court all the time to both exonerate and convict people.  See Pl. Ex. 26.  Det. Lt. Lennon's concern was based on his own internet

research, which consisted of a general "Google" search that revealed the California article he had sent to Officer Williams in the text exchange quoted above.  See PR ¶¶ 74, 76.  According to that article, written in 2013, officials in California had identified problems with the GPS tracking device, including a failure to trigger tampering alerts and errors with the accuracy of reported locations.  PF ¶ 30; Pl. Ex. 31 (article entitled "Tests found major flaws in parolee GPS monitoring devices").  According to the plaintiff, Det. Lt. Lennon did not take any steps to determine whether there were inaccuracies with the GPS devices used in Massachusetts, or whether the device discussed in the California article was the same product that Wynn wore.  See PR ¶¶ 75-76.[5]  Nevertheless, despite the probation officer's insistence on the accuracy of the GPS monitor, Det. Lt. Lennon did not concede the point and wrote to her, "With regard to the accuracy of the GPS, that issue will have to be resolved by the court."  Pl. Ex. 26 at 1/12.

### Post Arraignment Events

ADA Lelle sent Wynn's attorney the GPS screenshots the day after the arraignment, on March 31, 2015.  Pl. Ex. 30 (Fournier Aff.) at ¶ 10.  There is no evidence that defense counsel took any steps to have Wynn released based on that data.  Nevertheless, after the arraignment, ADA Lelle continued to pursue information about the accuracy of the GPS data.  See PR ¶ 84.  Det. Schmidt allegedly told ADA Lelle that "people from the Cohasset Police Department" thought that the GPS data was inaccurate.  PR ¶¶ 80-81.  According to the plaintiff, ADA Lelle

---

[5]  The parties dispute whether there is evidence that a GPS is not always accurate.  Thus, the defendants cite to concerns expressed by others, including a judge, as to a GPS' reliability, while the plaintiff argues that while there are locations where a GPS may not have reception, there is no evidence that location data that is actually recorded is unreliable.  See, e.g., DF ¶¶ 78-79; PR ¶¶ 78-79.  The parties agree, however, that the defendants did not have any other support for their concern other than the California article.

had no independent concerns about the accuracy of the GPS, and she only questioned the GPS data due to Det. Schmidt's repeated warning that the data was inaccurate. See PR ¶ 81. It is undisputed that in light of the uncertainty of the situation, ADA Lelle decided to withdraw the Commonwealth's motion for a dangerousness hearing while the investigation continued. DF ¶ 81; PR ¶¶ 81-82.

ADA Lelle tried to set up a meeting with the operators of the ELMO GPS system. See DF ¶ 84. In addition, the DA's office set up a SAIN (Sexual Assault Intervention Network) interview, with the victim on April 7, 2015. DF ¶¶ 85, 88. At the interview, the victim described the male as operating a small red sedan, and stated that he had dark gray hair and a beard which was lighter gray in the front and around the chin and dark on the sides near the sideburns. DF ¶ 89; PR ¶ 89; Defs. Ex. 16. She also described the man as wearing a dark, long sleeve shirt and black pants. Defs. Ex. 16. She now described the iPhone as gray and not gold. Id.

Following the interview the defendants obtained a search warrant to search Wynn's apartment. DF ¶ 91; PR ¶ 91. They were searching for a gold iPhone, a watch cap and dark clothing that the victim had described in her interviews. See DF ¶ 92. The landlord had removed Wynn's possessions from the apartment after learning of the arrest, and given them to Wynn's aunt, who allowed the police to search Wynn's belongings. DF ¶ 94; PR ¶ 94. A watch cap was seized, but the other subject items of the search were not found. DF ¶ 94.

The defendants and another ADA, Anne Yas, met with someone from the ELMO GPS program at the Canton Police Department so that they could see the monitoring program live, as opposed to just the screen shots. DF ¶ 97. The GPS data showed that Wynn had stopped in the area of the Fiori's Gulf Station on Chief Justice Cushing Highway at the relevant time. DF

¶¶ 98-99.  On April 8, 2015, Det. Schmidt went to the Gulf Station and viewed the video data

from that location.  DF ¶¶ 100, 102.  He also verified the time stamp on the store's video

recording.  DF ¶ 101.  Based on this view, Det. Schmidt determined that Wynn was at the store

at the relevant time, and that Wynn was not the person who had approached the victim.  Defs.

Ex. 18; DF ¶ 102.  On the same day, ADA Lelle filed a Pre-trial Probation form with the District

Court in Wynn's criminal matter requesting that Wynn be released on probation with special

conditions.  DF ¶ 103.

On April 14, 2015, ADA Lelle filed an entry of *Nolle Prosequi* in Wynn's case.  PR ¶ 106.[6]

Therein the Commonwealth reported that since the arraignment, "the investigation has

continued regarding whether the defendant was at a different location at the reported time of

the incident."  Defs. Ex. 15.  As the Commonwealth wrote further:

> GPS records obtained in the course of the investigation do not place the
> Defendant in the location.  Additionally, there have been conflicts in the
> identification of the defendant as well as regarding clothing and the motor
> vehicle used in connection with the crime.
>
> Therefore the District Attorney's Office is unable to proceed with this case,
> at this time.  Wherefore, the Commonwealth respectfully submits this
> Nolle Prosequi in the interest of justice.

Id.  Wynn was not released on April 14th because the charges had triggered a probation

violation.  PF ¶ 65.  Wynn was held in custody until April 17, 2015, when the probation violation

was withdrawn.  Id.

Additional facts will be provided below where appropriate.

---

[6]  The delay in filing the *nolle prosequi* is not explained in the record, but it is not attributed to any
actions on the part of the defendants.

### III.  ANALYSIS

**A.  Standard of Review – Summary Judgment**

 "The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted).  The burden is upon the moving party to show, based upon the discovery and disclosed materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue."  PC Interiors, Ltd., 794 F. Supp. 2d at 275.  The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  The court affords "no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is

less than significantly probative." <u>Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London</u>, 637 F.3d 53, 56 (1st Cir. 2011) (internal quotation marks and citation omitted). Rather, "[w]here, as here, the nonmovant bears the burden of proof on the dispositive issue, it must point to 'competent evidence' and 'specific facts' to stave off summary judgment." <u>Id.</u> (citation omitted).

Applying these principles to the instant case compels the conclusion that the defendants' motion for summary judgment must be allowed.

### B.  Standard of Review - Qualified Immunity

"Qualified immunity, which is a question of law, is an issue that is appropriately decided by the court during the early stages of the proceedings[.]" <u>Tatro v. Kervin</u>, 41 F.3d 9, 15 (1st Cir. 1994). <u>See</u> <u>also</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed.2d 411 (1985) (recognizing that issue of qualified immunity may be appropriately decided at the summary judgment stage to avoid subjecting government officials to the costs and burdens of trial). In the instant case, the plaintiff contends that the defendant officers should have stopped the criminal proceedings upon obtaining the GPS data that showed that Wynn was not on Hill Street at the time of the incident. The defendants contend that even if their decision to proceed was in error, which they do not concede, they are entitled to qualified immunity. As detailed below, this court agrees.

"Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" <u>Lane v. Franks</u>, 134 S. Ct. 2369, 2381, 189 L. Ed. 2d 312 (2014) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743, 131 S. Ct. 2074, 2084-85, 179 L. Ed. 2d 1149 (2011)). It "is a prophylactic doctrine" that "shields government officials 'from

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Morse v. Cloutier, --- F.3d ---, Nos. 15-2043, 15-2053, 2017 WL 3667648, at *4 (1st Cir. Aug. 25, 2017) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed.2d 396 (1982)). "[Q]ualified immunity gives an officer the benefit of a margin of error." Morelli v. Webster, 552 F. 3d 12, 24 (1st Cir. 2009). "When properly applied," the doctrine of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" Morse, 2017 WL 3667648, at *4 (quoting White v. Pauly, 137 S. Ct. 548, 551, 196 L. Ed.2d 463 (2017) (per curiam) (additional citations omitted)).

In order "to determine whether qualified immunity applies in a given case, [the court] must determine: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010) (citing Estrada v. Rhode Island, 594 F.3d 56, 62-63 (1st Cir. 2010)). "These two prongs of the analysis need not be considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity defense." Id. (citing Maldonado v. Fontanes, 568 F.3d 263, 269-70 (1st Cir. 2009)). See also Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (court may proceed directly to the second step and defer an analysis of the first step if more efficient).

As the First Circuit has explained further:

The second step of this inquiry is itself divisible into two sub-parts. First, the plaintiff must identify either "controlling authority" or a "consensus of cases of persuasive authority" sufficient to signal to a reasonable officer that particular conduct would violate a constitutional right. *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*

> *v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam)
> (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272
> (2001)). The aim is to ensure that the state of the law is sufficiently specific to
> give fair and clear warning to government officials. *See United States v. Lanier*,
> 520 U.S. 259, 270-71, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). The second sub-
> part asks whether a reasonable officer in the defendant's position would have
> known that his conduct violated the established rule. *See Wilson v. City of
> Boston*, 421 F.3d 45, 57-58 (1st Cir. 2005).

Morse, 2017 WL 3667648, at *4.  Finally, "[i]n conducting the whole analysis, [the court] must

take care 'to avoid the chilling effect of second-guessing where the officer, acting in the heat of

events, made a defensible (albeit imperfect) judgment.'"  Raiche, 623 F.3d at 36 (quoting

Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010)).  As detailed herein, this court finds that

Wynn has failed to meet the requirements of either prong of the analysis.

### C.       The Alleged Constitutional Violation

Wynn has brought a claim under 42 U.S.C. § 1983 alleging a violation of his Fourth

Amendment rights based on a claim of malicious prosecution.  In Hernandez-Cuevas v. Taylor,

723 F.3d 91 (1st Cir. 2013) ("Hernandez-Cuevas I"), the First Circuit expressly recognized for the

first time "that the Fourth Amendment encompasses a malicious prosecution claim."  See Id. at

97, 99-100 (1st Cir. 2013).  Thus, "the Fourth Amendment protection against seizure but upon

probable cause does not end when an arrestee becomes held pursuant to legal process."  Id. at

99-100.  As the Court explained:

> Though the Fifth and Sixth Amendments generally control events following the
> arrest and arraignment of an individual accused of committing a crime, we are
> convinced that an individual does not lose his Fourth Amendment right to be
> free from unreasonable seizure when he becomes detained pursuant to judicial
> process. Certainly, in most cases, the neutral magistrate's determination that
> probable cause exists for the individual's arrest is an intervening act that could
> disrupt any argument that the defendant officer had caused the continued
> unlawful seizure. *See Sanchez v. Pereira–Castillo*, 590 F.3d 31, 50 (1st Cir.2009)
> ("We employ common law tort principles when conducting 'inquiries into

causation under § 1983.' " (quoting *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 561 (1st Cir.1989))). <u>But, if a plaintiff can overcome this causation problem and demonstrate that law enforcement officers were responsible for his continued, unreasonable pretrial detention, the plaintiff has stated a constitutional injury that may be vindicated through a § 1983 action.</u> *See Evans,* 703 F.3d at 647 ("[E]ven where ... a prosecutor retains all discretion to seek an indictment, police officers may have caused the seizure and remain liable to a wrongfully indicted defendant[.]"). For example, officers may be liable for unlawful pretrial detention when they have (1) "lied to or misled the prosecutors"; (2) "failed to disclose exculpatory evidence"; or (3) "unduly pressured the prosecutor to seek the indictment." *Id.* at 647–48; *see also Sykes,* 625 F.3d at 308–309 (requiring plaintiff to demonstrate that the defendant officer "made, influenced, or participated in the decision to prosecute" (quoting *Fox v. DeSoto,* 489 F.3d 227, 237 (6th Cir.2007)) (internal quotation marks and alterations omitted)).

<u>Hernandez-Cuevas I</u>, 723 F.3d at 100 (emphasis added). For the reasons detailed herein, this court finds that Wynn has failed to establish a violation of his Fourth Amendment rights.

### Significance of Magistrate's Determination

As an initial matter, the defendants argue that the fact that there was probable cause for Wynn's arrest precludes the claim against them, since the magistrate's issuance of the arrest warrant was "an intervening act" that negates the argument that "the defendant officers [had] caused the continued unlawful seizure." <u>Id.</u>; Defs. Mem. (Docket No. 35) at 4. Moreover, according to the defendants, having established probable cause for the arrest, they had no obligation to continue their investigation. <u>Id.</u> at 4-5. <u>See</u> <u>Holder v. Town of Sandown</u>, 585 F.3d 500, 505 (1st Cir. 2009) ("We have made it clear that an officer normally may terminate his investigation when he accumulates facts that demonstrate sufficient probable cause.") (internal punctuation and citation omitted).

For his part, Wynn points to the fact that the police obtained a criminal complaint against him after learning that the GPS data did not put him at the scene of the incident at the

relevant time.  See Pl. Mem. (Docket No. 39) at 14.  While there is no evidence in the record

that the issuance of a criminal complaint involved a new assessment of probable cause by a

judicial officer, it is clear from the record that the police had control over whether to seek a

complaint and pursue the claims against Wynn even after his arrest.  For example, the police

did not seek a complaint against him for failing to register as a sex offender, although that was

a charge stated in the original arrest affidavit and warrant.  "Pretrial detention can violate the

Fourth Amendment not only when it precedes, but also when it follows, the start of legal

process in a criminal case."  Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 918, 197 L. Ed.2d 312

(2017).  Moreover, "[p]robable cause to arrest does not suspend an officer's continuing

obligation to act 'reasonably'" and he may not "close his eyes to all subsequent developments."

Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986).  The issue in this case "is whether the

defendants had probable cause to initiate the criminal charge against [Wynn], not whether they

had probable cause to arrest him."  Meehan v. Town of Plymouth, 167 F.3d 85, 89 (1st Cir.

1999).  Therefore, this court concludes that the issuance of the arrest warrant does not shield

the defendants from potential liability.

### Elements of a § 1983 Malicious Prosecution Claim[7]

In order to establish his claim of malicious prosecution under § 1983, Wynn must

establish that the police (1) caused (2) his seizure pursuant to legal process unsupported by

probable cause, and (3) the criminal proceedings terminated in his favor.  Hernandez-Cuevas I,

723 F.3d at 101.  For the reasons detailed herein, although this court has found that the

---

[7] As detailed infra, a § 1983 claim based on malicious prosecution differs from the state law claim in that the constitutional claim does not expressly require malice.  See Hernandez-Cuevas I, 723 F.3d at 99-101 (discussing differences).

issuance of the arrest warrant does not preclude a finding that the officers caused Wynn's continued detention, this court finds that Wynn has failed to otherwise establish either causation, or that he was detained without probable cause.[8]

## Causation

"To satisfy the first element, causation, [Wynn is] required to demonstrate that law enforcement officers were responsible for his continued, unreasonable pretrial detention." Hernandez-Cuevas v. Taylor, 836 F.3d 116, 125 (1st Cir. 2016) ("Hernandez-Cuevas II") (punctuation and citation omitted). As Wynn argues:

> Detectives Lennon and Schmidt caused Mr. Wynn's prosecution in two ways. First, they prepared an intentionally vague police report that omitted any mention that the GPS did not place Mr. Wynn at the scene. By concealing this information from the court and Mr. Wynn's defense attorney, Defendants ensured that Mr. Wynn would be charged and arraigned. Second, Defendants repeatedly told prosecutors that Mr. Wynn's GPS data was inaccurate, despite having been told by Probation Department officials that this was not true. By repeating their claim of inaccuracy despite obvious reason to know it was wrong, Defendants acted with reckless disregard for the truth and caused prosecutors to continue moving forward with baseless charges against Mr. Wynn.

Pl. Mem. (Docket No. 39) at 9. However, the undisputed facts fail to support Wynn's claim.

It has "long been clearly established law that the Fourth Amendment prohibits a police officer from manufacturing probable cause by knowingly including false statements in a warrant affidavit." Hernandez-Cuevas I, 723 F.3d at 96. Similarly, it is undeniable that "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals

---

[8] As detailed infra, even if this court were to find that there are disputed facts which preclude the entry of summary judgment on the issue of whether there was a constitutional violation, this court would still find that the defendants are entitled to summary judgment on the basis of qualified immunity.

for crimes they did not commit." <u>Limone v. Condon</u>, 372 F.3d 39, 44-45 (1st Cir. 2004). Thus, if the record supported Wynn's argument that the officers intentionally withheld information from prosecutors to pursue the claims against Wynn, he might have stated a viable claim. The problem with Wynn's argument is that it simply ignores the undisputed fact that the officers shared the information that the GPS data did not put Wynn at the scene with the District Attorney's office before the arraignment. This irrefutable fact negates his theory that the police were hiding this information. Similarly, the evidence is clear that the police disclosed these facts to Wynn's probation officer before the arraignment, and to his attorney by the day after the arraignment at the latest. The record simply does not support the conclusion that the police officers lied to or misled the prosecutors, or failed to disclose exculpatory evidence.

Moreover, the fact that ADA Lelle had the GPS data by the day after the arraignment at the latest, negates Wynn's contention that the police caused his detention. The District Attorney's Office had the authority to *nolle prosse* the charges against Wynn the day after the arraignment. Thus, unless the police wrongfully prevented the prosecutor from dismissing the charges (which they did not, as discussed below), there is no evidence from which a reasonable jury could conclude that the police caused Wynn's detention by failing to disclose the GPS data.

The record also does not support Wynn's contention that the police unduly pressured the prosecutor by challenging the GPS data without support. Again, Wynn ignores the fact that Det. Lt. Lennon did, in fact, have an article that called the accuracy of the GPS device into question. There is no evidence in the record that the defendants lied about the source of their information, or fabricated evidence about the reliability of GPS devices. While the plaintiff argues that GPS data is used in courts to convict and exonerate, he certainly does not claim that

there have never been any challenges to the reliability of GPS data. The plaintiff has not

pointed to any evidence conclusively establishing that in all instances GPS location data is

always accurate. The record does not support Wynn's argument that it was inappropriate for

the officers to question the GPS data.

Similarly, there is no evidence that the officers put any untoward pressure on the ADA

to accept their concerns about the reliability of the GPS data. In fact, the evidence is that the

District Attorney's Office was free to disregard the officers' concerns, and did, in fact, conduct

its own analysis. In addition, the police participated in the continued investigation into the

accuracy of the monitor by going and reviewing the video tapes. Based on the undisputed

facts, no reasonable jury could conclude that the defendants wrongfully caused Wynn's

detention by lying, misleading or otherwise wrongfully pressuring the prosecutor. See

Hernandez-Cuevas I, 723 F.3d at 100.

### Probable Cause

Although a closer question, Wynn's claim of malicious prosecution must fail for the

additional reason that he cannot establish that there was no probable cause for his detention

before the tapes were located and viewed. The fact that there was exculpatory evidence

weighing in Wynn's favor does not preclude a finding of probable cause. See Acosta v. Ames

Dep't Stores, Inc., 386 F.3d 5, 9-10 (1st Cir. 2004). Here there was evidence that Wynn had

previously been convicted of enticement of a child in Connecticut. He admitted to being

familiar with the neighborhood and delivering newspapers there during the general time period

in question. Wynn's car was positively identified by the victim as being the car driven by the

perpetrator, and discrepancies between her original description and the actual vehicle were

explained. The officers had evidence that GPS monitors were not always accurate. Under such circumstances, there was probable cause for Wynn's continued detention, at least pending confirmation of the GPS data. See Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004) ("This court has affirmed that police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause.") (citing B.C.R. Transport Co., Inc. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984) for the proposition that "although not a per se rule, a probable cause determination predicated on information furnished by the victim is generally considered reliable").

This having been said, there is support for the proposition that "[i]n the civil context, probable cause is a matter for the jury if the facts are disputed." Gutierrez v. MBTA, 437 Mass. 396, 405 n. 10, 772 N.E.2d 552, 561 n. 10 (2002). See also Lewis v. Kendrick, 944 F.2d 949, 952 (1st Cir. 1991) (in § 1983 case, "a jury could find that to accept a hitherto unknown alleged victim's uncorroborated account without question, where there was ample opportunity to question it, was a circumstance that weighed against probable cause."). Assuming, arguendo, that the addition of the GPS data was sufficient to raise a question for the jury, the next inquiry is whether the defendants are entitled to qualified immunity. See Soto v. Bzdel, 214 F. Supp. 2d 69, 75 (D. Mass. 2002) (even though "a plaintiff may state a constitutional claim if, while a police officer is making an arrest pursuant to a warrant, the officer fails to release the plaintiff after the officer receives information upon which to reasonably conclude that the warrant had been recalled[,]" officers nonetheless are entitled to qualified immunity). As detailed below, this court finds that the defendants in the instant case are entitled to qualified immunity.

**D. The Defendants Are Entitled to Qualified Immunity**

Assuming that Wynn has stated a claim that his constitutional rights were violated, the court must consider "whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and then consider whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." Stamps v. Town of Framingham, 813 F.3d 27, 39 (1st Cir. 2016) (internal quotations and citations omitted). Courts are "not to define clearly established law at a high level of generality." Mullenix v. Luna, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (internal quotation and citation omitted). Thus, the "correct inquiry" "is whether it was clearly established that the Fourth Amendment prohibited the [officers'] conduct in the situation [they] confronted." Id. at 309 (internal punctuation and citation omitted). "Moreover, to prove that an asserted right is 'clearly established,' a plaintiff must cite 'cases of controlling authority in [his] jurisdiction at the time of the incident which clearly established the rule on which [he] seek[s] to rely' or identify 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" Soto v. Bzdel, 214 F. Supp. 2d at 75 (quoting Wilson v. Layne, 526 U.S. 603, 617, 119 S. Ct. 1692, 1700, 143 L. Ed.2d 818 (1999)). "Simply put, Plaintiff fails to make such a showing here." Id.

In the instant case, Wynn argues that "[t]he legal issue for purposes of qualified immunity is whether it was clearly established in March 2015 that police officers violated the Fourth Amendment by seeking criminal charges without probable cause." Pl. Mem. (Docket No. 39) at 16-17. This principle, while true, presents the issue at too high a level of generality. Rather, the issue is whether a police officer, when faced with GPS data showing that the suspect was not present at the crime scene, was obligated to accept that information without

question. Wynn has cited no Supreme Court, First Circuit or Massachusetts cases on point, and none have been found. He has not established that the defendants should have known that taking the time to confirm the accuracy of GPS data would have violated Wynn's Fourth Amendment rights. See also Mullenix, 136 S. Ct. at 308 ("specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.") (internal quotation and citation omitted). Moreover, in light of the California article, the evidence does not establish that any reasonable officer, in the defendants' position, would have known that their conduct was violating Wynn's constitutional rights.

Finally, Wynn's argument must fail for the additional reason that in the qualified immunity context, "[o]fficers are entitled to qualified immunity so long as the presence of probable cause is at least arguable." Glik v. Cunniffe, 655 F.3d 78, 88 (1st Cir. 2011) (internal quotation and citation omitted). For the reasons discussed more fully above, the defendants could reasonably have concluded that there was probable cause for the charges brought against Wynn even in light of the GPS data. For all these reasons, the defendants are entitled to qualified immunity.

### E.    State Law Claims

The plaintiff has also asserted common law claims for malicious prosecution and intentional infliction of emotional distress. Assuming the court exercises pendant jurisdiction over these claims if the federal claim is dismissed, this court finds that these claims also should be dismissed as they are defeated by the undisputed facts.

**Malicious Prosecution**

"The elements of a common-law cause of action for malicious prosecution are '(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice.'" <u>Cabot v. Lewis</u>, No. 13-11903-FDS, 2017 WL 1013742, at *13 (D. Mass. Mar. 15, 2017) (quoting <u>Nieves v. McSweeney</u>, 241 F.3d 46, 53 (1st Cir. 2001)).  For the reasons detailed above, this court finds that the undisputed facts establish that there was probable cause for the charges brought against Wynn.  Even if the issue of probable cause is left to the jury, however, the plaintiff has failed to establish that the defendants acted with actual malice.  "Wanton or negligent behavior is insufficient" to establish malice, "without some evidence of an ulterior purpose." <u>Sklar v. Beth Israel Deaconess Med. Center</u>, 59 Mass. App. Ct. 550, 557, 797 N.E.2d 381, 387 (2003).  In the instant case, the defendants disclosed the GPS data to the District Attorney's Office prior to the arraignment, and to the prosecutor and defense attorney a day later, at the latest.  The undisputed facts establish that the police carried out an investigation for the purpose of locating the individual who tried to entice a minor into his car.  They followed leads, obtained an arrest warrant and search warrant, conducted identification procedures of both Wynn and his car, and helped obtain the dismissal of the charges when they determined that Wynn was not the right man.  There is no evidence that they acted for any improper purpose.

**Intentional Infliction of Emotional Distress**

In his final count, Wynn has alleged a claim of intentional infliction of emotional distress. "The elements of an IIED claim are '(i) defendant[s] intended to inflict emotional distress or

knew or reasonably should have known that emotional distress was likely to result from such conduct; (ii) the conduct was 'extreme and outrageous,' 'beyond all possible bounds of decency,' and 'utterly intolerable in a civilized community'; (iii) the defendant[s'] conduct proximately caused plaintiff's emotional distress; and (iv) the distress was so 'severe that no reasonable man could be expected to endure it.'" Cabot v. Lewis, 2017 WL 1013742, at *13 (quoting Davignon v. Clemmey, 322 F.3d 1, 8 n.2 (1st Cir. 2003) (additional citations omitted)). Even assuming, arguendo, that there was no probable cause for Wynn's continued detention, his "IIED claim would still fail because the facts as alleged are not sufficiently outrageous to support such a cause of action." Godette v. Stanley, 490 F. Supp. 2d 72, 81 (D. Mass. 2007). There is simply no comparison between the facts of this case and of Limone v. U.S., 579 F.3d 79 (1st Cir. 2009) on which the plaintiff relies. In Limone, the court found that "FBI agents knowingly participated in the events leading to the wrongful indictment, prosecution, conviction, and continued incarceration of the scapegoats" and engaged in "egregious governmental misconduct[.]" Id. at 94, 83. No such extreme behavior occurred in the instant case.

## IV. CONCLUSION

This court in no way intends to minimize the harm caused to Mr. Wynn, who was incarcerated for 21 days for a crime that he did not commit. Nevertheless, a careful review of the record in this case establishes that his constitutional rights were not violated, and/or the defendants are entitled to qualified immunity. Moreover, Mr. Wynn's state law claims fail on the merits.

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Defendants' Motion for Summary Judgment (Docket No. 33) be ALLOWED.[9]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[9] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).